# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 22, 2023

Lyle W. Cayce
Clerk

No. 21-11239

MARCUS MAXWELL,

*Plaintiff—Appellant*,

*versus*

ROBERT ALMANZA, JR., *Major of Correctional Officers-French Robertson Unit*; CARMEN WALKER, *LVN-Hendrick Medical Center*; JOHN #1 DOE, *Correctional Officer-French Robertson Unit*; JOHN #2 DOE, *Correctional Officer-French Robertson Unit*; CHRISTOPHER SCHMIDT, *Lieutenant of Correctional Officers*; ALAN W. MERCHANT, *Captain of Correctional Officers-French Robertson Unit*; CLAYTON J. ARENDALL, *Captain of Correctional Officers-French Robertson Unit*; JOHN DOE, *Unit Grievance Investigator #2553-French Robertson Unit*; CHARLES L. BRANTON, *Sergeant*; PEYTON W. MCINTIRE, *Sergeant*; KARLA K. SADLER, *Major*; REYES, *Sergeant*; S. SULLIVAN, *Unit Grievance Investigator*; SAMANTHA D. ADAMS, *Sergeant*; PORTER, *Lieutenant*; COREY L. LAYNE, *Lieutenant*; CORY G. CLINKINBEARD, *Sergeant*; DESMA M. HOLGUIN, *Sergeant*; RICKY A. VILLANUEVA, *Captain*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:18-CV-179

No. 21-11239

Before Jones, Stewart, and Duncan, *Circuit Judges*.

Per Curiam:[*]

Marcus Maxwell, a *pro se* Texas inmate, sued nineteen officials at the Texas Department of Criminal Justice (TDCJ) Robertson Unit in Abilene, Texas under 42 U.S.C. § 1983. He alleges that these officials committed numerous constitutional violations against him. At preliminary screening, the magistrate judge dismissed most of Maxwell's claims as frivolous and/or for failure to state a claim. On appeal, Maxwell argues his excessive force and sexual assault claims were erroneously dismissed. For the reasons explained below, we AFFIRM.[1]

I.

Maxwell alleges that TDCJ officials violated his constitutional rights in numerous ways, all of which need not be recited here. Because Maxwell is a *pro se* prisoner, his claims were subject to preliminary screening under 28 U.S.C. §§ 1915(e)(2) and 1915A. The magistrate judge[2] held a *Spears* evidentiary hearing and reviewed prison and medical records submitted by the TDCJ.[3] Maxwell's inhumane conditions of confinement claim and one of his deliberate indifference to serious medical needs claims survived

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] We also deny Maxwell's motion to appoint counsel.

[2] Maxwell consented to proceed before a magistrate judge.

[3] A *Spears* hearing, which we authorized in *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), is an "evidentiary hearing in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement." *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996). Its purpose is "to flesh out the allegations of a prisoner's complaint to determine whether *in forma pauperis* status is warranted or whether the complaint, lacking an arguable basis in law or fact, should be dismissed summarily as malicious or frivolous." *Ibid.*

preliminary screening, but the magistrate judge dismissed Maxwell's other claims as frivolous and/or for failure to state a claim.

On appeal, Maxwell focuses on his claims that officials subjected him to excessive force and sexually assaulted him in February 2019.[4] These claims stem from Maxwell's return to the Robertson Unit after an off-site medical appointment at which he had a catheter placed. Upon his return, Maxwell was walking down a hallway with Sergeant Peyton McIntire. When the two turned a corner, they encountered an unnamed officer. At that point, Maxwell abruptly stopped walking. He says he did so because "you don't want to get too close to an officer." Maxwell claims that his sudden stop pulled on his catheter, causing him pain, and he sat down to alleviate it. The unnamed officer ordered Maxwell to stand up. Maxwell claims he told the officer that he could not do so because of the pain from his catheter. When Maxwell did not comply, the officer "grabbed" Maxwell. He attempted to place Maxwell's hands in restraints, but Maxwell resisted and moved his hands into his pants. Sergeant McIntire, Sergeant Charles Branton, and several other officers then worked together to force Maxwell into a prone position. Maxwell claims he was struck several times in the process. The officers then moved Maxwell to a cell.

Prison records—whose veracity Maxwell does not contest—indicate that the officials believed at this point that Maxwell was hiding contraband. So, once in the cell, the officials told Maxwell that they were searching for contraband, and they removed his clothes. Sergeant Branton performed a cavity search, inserting his finger into Maxwell's anus for two to three seconds. While Maxwell initially also contended that the officers pulled the

---

[4] For reasons explained below, Maxwell's passing arguments about other claims are forfeited as inadequately briefed. So, we need not set forth the factual backgrounds of those claims.

catheter out of him during their search, he admits on appeal that they did not do so, as medical records from Maxwell's examination immediately after this incident indicate the catheter was still in place. The officers' search for contraband revealed a pen Maxwell was hiding in his waistband.

Maxwell did not suffer any serious injuries from the incident. He claims he sustained "cuts and bruises" to his face and an injury to his wrist. While Maxwell contends that TDCJ officials refused his requests for medical attention, this is belied by his admission that he underwent a medical examination shortly after the incident. Notwithstanding this admission—and apparently for the first time on appeal—Maxwell claims that he had to set his cell on fire to receive medical attention.

Along with many of Maxwell's claims not relevant here, the magistrate judge dismissed Maxwell's excessive force and sexual assault claims as frivolous and for failure to state a claim. The magistrate judge concluded that Maxwell's allegations failed to state an excessive force claim because TDCJ officials described only good faith efforts "to subdue him and restore order." As for Maxwell's sexual assault claim, the magistrate judge concluded that, even assuming Sergeant Branton's action was not a legitimate cavity search, it was still too brief a contact to be actionable under the Eighth Amendment. Finding "no just reason for delay," the magistrate judge entered partial final judgment under Federal Rule of Civil Procedure 54(b). Maxwell appealed.

## II.

We review a dismissal of claims as frivolous under § 1915(e)(2)(B)(i) for abuse of discretion. *Green v. Atkinson*, 623 F.3d 278, 279–80 (5th Cir. 2010). While "[t]his court's precedent is inconsistent as to whether a § 1915A(b)(1) dismissal is reviewed de novo or for abuse of discretion," *Morris v. McAllester*, 702 F.3d 187, 189 (5th Cir. 2012), we need not resolve

that issue here, as Maxwell's appeal fails under either standard. A complaint is frivolous if it has no "arguable basis in fact or law." *Ibid.* Meanwhile, we review a dismissal for failure to state claim under §§ 1915(e)(2)(B)(ii) and 1915A(b) *de novo*. In doing so, we "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013). In addition, we consider testimony from the *Spears* hearing, as well as authenticated medical and prison records. *Wilson v. Barrientos*, 926 F.2d 480, 482–84 (5th Cir. 1991). But such records may not be used to refute the plaintiff's allegations or resolve disputed facts. *See Williams v. Luna*, 909 F.2d 121, 124 (5th Cir. 1990); *Cardona v. Taylor*, 828 F. App'x 198, 202 (5th Cir. 2020) (per curiam).

## III.

On appeal, Maxwell argues that he adequately pled excessive force and sexual assault claims stemming from the February 2019 incident, and that the magistrate judge wrongly dismissed them. None of the defendants involved in those events filed a response. *See Hager v. DBG Partners, Inc.*, 903 F.3d 460, 464 (5th Cir. 2018) (explaining that an appellee's failure to file a brief "does not preclude our consideration of the merits") (citing Fed. R. App. P. 31(c))).

## A.

We consider Maxwell's excessive force claim first. The Eighth Amendment forbids prison officials from applying force against inmates that amounts to cruel and unusual punishment. *See Hudson v. McMillian*, 503 U.S. 1, 5–7 (1992). When considering whether force is excessive—and therefore unconstitutional—"the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. An excessive force claim has both subjective and objective components. *See, e.g.*, *Mosley v. White*, 464 F. App'x

206, 211–12 (5th Cir. 2010) (per curiam). "The subjective component requires the plaintiff to establish that the defendant acted maliciously and sadistically in an 'unnecessary and wanton infliction of pain.'" *Id.* at 211 (quoting *Hudson* 503 U.S. at 8). The objective component, meanwhile, requires the plaintiff to establish that "the alleged wrongdoing was objectively 'harmful enough to establish a constitutional violation.'" *Ibid.*

Nothing in Maxwell's allegations or *Spears* testimony suggests that the officers acted "maliciously and sadistically in an unnecessary and wanton infliction of pain." *Ibid.* Rather, the officers' actions responded to Maxwell's disruptive, non-compliant behavior. The officers also acted on their belief that Maxwell was hiding contraband—and their suspicions were vindicated when they discovered the pen concealed in Maxwell's waistband.

Even if, as Maxwell alleges, he told the officers he could not comply with their orders because of his catheter, their decision to move him to a prone position was not malicious or sadistic under the circumstances. *See Hudson*, 503 U.S. at 7. The officers would have had no way of knowing whether Maxwell was telling the truth. Prison officials often find themselves in rapidly developing situations that require them to make split-second decisions to maintain discipline and to protect both inmates and themselves. They are thus "entitled to wide-ranging deference." *Baldwin v. Stadler*, 137 F.3d 836, 840 (5th Cir. 1998). Under the facts alleged by Maxwell, the officers' actions to quickly subdue him represented "a good-faith effort to maintain or restore discipline," and were neither malicious nor sadistic. *Hudson*, 503 U.S. at 6.

## B.

Next, we consider Maxwell's claim that Sergeant Branton sexually assaulted him by performing a cavity search. The magistrate judge considered this contention under the Eighth Amendment because Maxwell

described it as an assault rather than a search. But notwithstanding Maxwell's characterization, "[o]n a liberal reading . . . we take [Maxwell] to allege an unreasonable search that sounds under the Fourth Amendment, which provides the proper analysis under our precedent for challenges to prison searches." *Parker v. Woods*, 834 F. App'x 92, 95 (5th Cir. 2020) (per curiam). "The Fourth Amendment . . . requires that 'searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed.'" *Elliot v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994) (quoting *United States v. Lilly*, 576 F.2d 1240, 1244 (5th Cir. 1978)).

Maxwell's chief contention on appeal is that Sergeant Branton "had no legitimate reason for a cavity search." Maxwell claims that he had been "fully" searched prior to leaving his cell for his initial medical appointment at which the catheter was placed, and that he had been accompanied by a prison official at all times thereafter. But according to Maxwell's testimony at the *Spears* hearing, he had never received a cavity search before the one performed by Sergeant Branton. So, whatever search Maxwell had received before leaving his cell evidently did not include a cavity search.

Moreover, even if Maxwell had been subject to a complete search before his appointment, it would not have been unreasonable under the circumstances for the officers to search him again. "Because a prison administrator's decisions and actions in the prison context are entitled to great deference from the courts, the burden of proving reasonableness is a light burden." *Elliot*, 38 F.3d at 191. After all, "[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "Something as simple as an overlooked pen can pose a significant danger." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 333 (2012). So, "[t]he Supreme Court has

7

squarely recognized that prison officials have a 'serious responsibility' to make sure inmates do not conceal such potentially lethal items on, or in, their bodies." *Parker*, 834 F. App'x at 96 (quoting *Florence*, 566 U.S. at 332). When an inmate exhibits non-compliant, disruptive behavior that reasonably leads an official to believe he may be hiding contraband, we will not second-guess the official's decision to promptly search the inmate—even if the inmate was recently searched.

Furthermore, the cavity search here was not unreasonable. It lasted only two to three seconds, so it was not "unduly lengthy." *Ibid.* It was performed in the privacy of Maxwell's cell and was not conducted in a "humiliating and degrading manner." *Id.* at 97 (quoting *Elliott*, 38 F.3d at 191). While "some circuits have distinguished purely visual searches from those that involve varying degrees of touching or intrusion," the touching or intrusion here "was incident to a legitimate body cavity search." *Id.* at 96. Especially given Maxwell's noncompliance with the officers' prior orders, it was not unreasonable for Sergeant Branton to conduct the cavity search directly rather than by "instruct[ing]" Maxwell to "move or spread [his] buttocks" so that Sergeant Branton could perform the search visually. *Florence*, 566 U.S. at 325.

In sum, the cavity search performed on Maxwell satisfies the "light burden" necessary to "prov[e] reasonableness." *Elliot*, 38 F.3d at 191.[5] That the officers' search as a whole revealed that Maxwell was in fact hiding a pen in his waistband—though not dispositive—adds an exclamation point to our conclusion. *See Florence*, 566 U.S. at 333.

---

[5] Because we conclude that there was no underlying unreasonable search by Sergeant Branton, we need not address Maxwell's claims of bystander liability against the other officers.

No. 21-11239

## C.

Maxwell also contends, in conclusory fashion, that he adequately alleged Eighth Amendment deliberate indifference to serious medical needs and Fourteenth Amendment due process violations by the officers in the aftermath of the February 2019 incident. An appellant forfeits an argument "by failing to adequately brief the argument on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). "To be adequate, a brief must 'address the district court's analysis and explain how it erred.'" *Sec. & Exch. Comm'n v. Hallam*, 42 F.4th 316, 327 (5th Cir. 2022) (quoting *Rollins*, 8 F.4th at 397 n.1). "Although we liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must still brief the issues and reasonably comply with the standards of [Federal Rule of Appellate Procedure] Rule 28." *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). Maxwell wholly fails to contend with the magistrate judge's thorough reasons for dismissing these deliberate indifference and due process claims. Accordingly, his arguments as to these claims are forfeited.[6]

## IV.

The district court's judgment is AFFIRMED.

---

[6] To the degree that Maxwell mentions other claims not discussed in this opinion, those arguments are forfeited as well. The same is true of Maxwell's claim that the magistrate judge wrongly resolved disputed facts in the appellees' favor, as Maxwell does not say what he believes those disputed facts are.